**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Christopher J.,[1]                                    Case No. 25-cv-2761 (SGE)

          Plaintiff,

v.                                                                **ORDER**

Frank Bisignano, *Commissioner of Social Security*,

          Defendant.

---

This matter is before the Court on the parties' respective briefing addressing the Commissioner's final decision denying benefits. (*See* Pl.'s Br. (Dkt. 9); Comm'r Br. (Dkt. 18); Pl.'s Reply (Dkt. 19).) Plaintiff Christopher J. ("Mr. J") argues that the Commissioner of Social Security's denial of an application for disability benefits should be reversed because the Agency's Administrative Law Judge ("ALJ") committed legal error and the resulting decision is not supported by substantial evidence. For the reasons set forth below, the Court concludes that the Mr. J's request should be denied and this matter should be dismissed.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff, it is by his or her first name and last initial only.

1

## I.    Background

The Social Security regulations set forth a sequential method of evaluating disability claims. 20 C.F.R. §§ 404.1520(a). Disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The first step is to determine whether the claimant engages in substantial gainful activity. At the second step, the ALJ determines whether the claimant suffers from a severe impairment—i.e., an impairment that significantly limits the ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c). If not, the claim is denied. If so, at the third step, the ALJ determines whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If the claimant's impairment meets or equals a listed impairment, then the claim will be granted. If not, at the fourth step, the ALJ determines whether the claimant has an impairment which precludes the performance of past relevant work. 20 C.F.R. § 404.1520(e). This includes evaluating the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work on a sustained basis despite limitations from any impairments. If the claimant's impairments do not preclude performance of past relevant work, then the claim will be denied. If the claimant's impairments do preclude performance of past relevant work, then at the fifth step, the ALJ determines whether the claimant's impairments prevent the performance of any other work,

considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(f).

Mr. J applied for disability insurance benefits under Title II of the Social Security Act on January 3, 2023. (*See* R. 203.) His initial application was denied, as was the request for reconsideration. (R. 83, 91.) A hearing was held before an ALJ on July 9, 2024, at which Mr. J amended the alleged onset date of disability to January 4, 2024 (Dkt. 10), and the ALJ issued a determination that Mr. J was not disabled on August 7, 2024. (R. 7-34.) Mr. J asked the Appeals Council to review the ALJ's decision, and the Appeals Council declined. (R. 1-5.) Mr. J filed the Complaint in this matter on July 2, 2025. (Compl., Dkt. 1.)

## II.    Legal Standard

Federal courts will uphold the Commissioner's denial of a disability claim if substantial evidence supports the ALJ's findings and if the decision is not based on legal error. *See Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011). "Legal error may be an error of procedure, . . . the use of erroneous legal standards, or an incorrect application of the law," and courts review whether an ALJ based a decision on legal error de novo. *Collins*, 648 F.3d at 871 (internal citations omitted).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175

(8th Cir. 1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). A court determining whether evidence is substantial must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

The substantial-evidence standard is deferential, and courts should not reverse the Commissioner's findings simply because evidence may exist in the administrative record that would support a different conclusion. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Instead, a court should reverse only when the ALJ's decision is outside the reasonable "zone of choice" created by the evidentiary record. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). Therefore, the law requires that this Court review the ALJ's factual determinations with deference, neither re-weighing the evidence nor reviewing the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). However, the Court's deference to the ALJ is not absolute. Where an ALJ fails to adequately support their determination, the Court may remand. *See, e.g., Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099 at *26 (D. Minn. Jan. 26, 2017) (noting that the ALJ must demonstrate some "logical bridge" between the evidence and their conclusions).

Courts reviewing ALJ decisions must read and consider the decision in its entirety. *See, e.g., Wiese v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2009) (determining the basis of

4

the ALJ's finding was "apparent from the opinions entirety"). An ALJ is not required to evaluate the medical opinions in any particular section of her opinion *See, e.g.*, *Jones v. Astrue*, 619 F.3d 963, 970 (8th Cir. 2010) (ALJ's narrative explanation in different section of decision can support findings throughout the decision).

### III.   ALJ's Decision

The ALJ began her analysis by determining that Mr. J remains insured through December 31, 2026, and has not engaged in substantial gainful activity since January 4, 2024. (R. 12-13.) The ALJ next determined that Mr. J has the following severe impairments: lumbar spinal impairment, status post lumbar laminectomy and discectomy in October 2023, with postlaminectomy syndrome; cervical spinal impairment, status post C4-C6 fusion in 2018; right shoulder degenerative joint disease and tendinitis, with partial-thickness supraspinatus tear, status post arthroscopic surgery in April 2024; migraine headaches; left foot and ankle fracture with residual symptoms/midfoot arthritis, status post open reduction internal fixation (ORIF) surgery; left knee meniscus tear; and obesity. (R. 13-15.) At step three, the ALJ determined that Mr. J's impairments did not meet or medically equal the criteria of any listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (R. 15-20.)

At step four, the ALJ determined that Mr. J had the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b) with the following limitations:

> able to stand and/or walk 4 out of 8 hours; can occasionally stoop, kneel crouch, and crawl; should never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; should not be exposed to environmental hazards; should never balance, as that term is defined by the SCO; can frequently reach overhead bilaterally; can

frequently reach in all other directions, including laterally with the dominant right upper extremity; the individual requires the ability to use a cane for prolonged ambulation and walking on uneven terrain.

(R. 20.) Using this RFC, the ALJ determined that Mr. J was unable to perform any past relevant work. (R. 27.) At step five, the ALJ determined that Mr. J could still perform other jobs that exist in significant numbers in the national economy, including small parts assembler, merchandise marker, and office helper. (R. 28-29.)

## ANALYSIS

Mr. J argues that the ALJ's RFC determination was not supported by substantial evidence. Specifically, Mr. J argues: (1) the ALJ failed to properly evaluate the supportability and consistency of the medical opinion of Jessica Stageberg, NP; (2) the ALJ failed to properly evaluate Mr. J's subjective symptoms as required by the regulations; and (3) the ALJ failed to build a logical bridge between the medical evidence and Mr. J's RFC.

### I.    Supportability and Consistency of Medical Opinions

### A. Regulations require the ALJ to evaluate the supportability and consistency of medical opinions.

An ALJ must consider all medical opinions in the record. 20 C.F.R. § 404.1527(c). The Social Security regulations require the ALJ to explain how persuasive each medical opinion is and to explain the "supportability and consistency" of each opinion. 20 C.F.R. § 404.1520c(a). "ALJs evaluate the persuasiveness of medical opinions by considering [factors including] (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source

6

has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022).

The first two factors of supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and, therefore, an ALJ must explain how she considered the factors of supportability and consistency in her decision." 20 C.F.R. § 404.1520c(b)(2). "The ALJ's brevity is not reversible error." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021). At the same time, although an explanation "need not be exhaustive," "boilerplate or blanket statements will not do." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (cleaned up). An ALJ's failure to explain either supportability or consistency is reversible error. *Id.*

Additionally, an ALJ may "accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022). The ALJ is not required to identify each and every scrap of evidence that supports or detracts from the medical opinions, but she must at least set forth reasoning "clear enough to allow for appropriate judicial review." *Grindley*, 9 F.4th at 631; *see also Diane M. W. v. Kijakazi*, Case no. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Minn. Sept. 22, 2022) ("The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed."). The regulations require that the ALJ explain how she considered the supportability and consistency factors in evaluating a psychological expert's administrative medical findings. 20 C.F.R. § 416.920c(b)(2); *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (failure to articulate consistency is a legal error that requires remand); *Michael B. v. Kijakazi*, Case no. 21-cv-1043 (NEB/LIB), 2002 WL 4463901, at

*2 (D. Minn. Sept. 26, 2022) (failure to articulate supportability is a legal error that requires remand). The ALJ does not need to use the words "supportability" and "consistency," but "it must be clear" that the ALJ addressed the factors. *Diane M.W.*, 2022 WL 4377731, at *5 (citing *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *8 (D.S.D. July 14, 2022); *Goss v. Kijakazi*, No. 4:21-cv-0663 (LPR/JJV), 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)). An ALJ's failure to articulate how she considered the supportability and consistency factors is legal error requiring remand. *See, e.g.*, *Susan H. v. Kijakazi*, Case no. 21-cv-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023); *Michael B.*, 2022 WL 4463901, at *2; *Joel M. B. v. Kijakazi*, Case no. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *3 (D. Minn. June 1, 2022) (citing *Lucus*, 960 F.3d at 1070).

The regulations define supportability and consistency. Although "supportability" and "consistency" are terms of art, the regulations indicate that the words mirror their everyday meaning: supportability means that a prior administrative medical finding will be considered more persuasive the more it is supported by objective medical evidence; consistency means that a prior administrative medical finding will be more persuasive if it is consistent with the other medical and nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. § 416.920c(c)(1), (2).

A reviewing court's inquiry is not whether it disagrees with the ALJ's explanation of the supportability and consistency factors based on the record because that would be an improper reweighing of the evidence. *See Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) (citing *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007)). Rather, a court reviews

only whether the ALJ explained the required factors, and if so—and even if the reviewing court disagrees with the ALJ's explanation—it must find no legal error. *See, e.g.*, *Berry v. Kijakazi*, Case no. 20-cv-0890 (RLW), 2021 WL 4459699, at *8 (E.D. Mo. Sept. 29, 2021).

### B. ALJ's evaluation of Nurse Stageberg's opinion satisfied regulatory obligations.

Mr. J first argues that the ALJ failed to evaluate the supportability and consistency of the medical source statement of Nurse Stageberg. Nurse Stageberg determined that Mr. J could occasionally lift and/or carry less than 10 pounds and frequently lift and/or carry less than 10 pounds, and he could stand, walk, or sit for less than 2 hours in an 8-hour workday. (R. 2853.) Nurse Stageberg further determined that Mr. J should be able to shift from sitting or standing/walking at will, will sometimes need to lie down at unpredictable intervals for 5 minutes, and could rarely twist, stoop, crouch, or climb stairs or ladders. (R. 2853-54.) Finally, Nurse Stageberg determined that Mr. J's impairments would cause him to be absent from work more than 4 days per month. (R. 2854.)

The ALJ addressed the supportability and consistency of Nurse Stageberg's opinion both at once. The ALJ noted that Nurse Stageberg's recommended limitations were supported by Mr. J's "chronic pain and ongoing complaints of pain." (R. 27.) But the ALJ narrowed the recommended limitations to be in place after the amended alleged date of onset because "the course of treatment, findings, and activities of daily living" were no longer consistent with Nurse Stageberg's findings. (R. 27.) The ALJ further noted that Nurse Stageberg's recommended extreme limitations on lifting/carrying, standing/walking/sitting, shifting positions, and avoiding all environmental exposures

9

"were not supported by a reasonable explanation or by citing clinical or diagnostic data related to one of the medically determinable impairments." (R. 27.)

Mr. J focuses his challenge on whether Nurse Stageberg's opinion supports a finding of disability. But that is a different question. This Court must determine whether the ALJ evaluated Nurse Stageberg's opinion as required by the regulations, and whether that evaluation is supported by substantial evidence—not whether Nurse Stageberg's opinion is supported by substantial evidence. Nurse Stageberg based much of her opinion on Mr. J's chronic pain, and the ALJ noted that the findings supporting Mr. J's complaints of pain "have been limited since the amended alleged date of onset[,]" January 4, 2024. Substantial evidence supports this determination, including records that his pain management was "mostly effective" in the spring of 2024. (R. 24, 2827.) Also, the ALJ noted that Mr. J reported at follow-up appointments that his physical therapy had been going well and was improving the strength and mobility in his right shoulder. (R. 25, 2826.)

Based on the above, the Court concludes that the ALJ evaluated the supportability and consistency of Nurse Stageberg's opinion, as it related to the relevant time period, January 4, 2024 through August 7, 2024. This satisfies the ALJ's obligations under the regulations.

## II.    ALJ Evaluation of Mr. J's Subjective Symptoms

Mr. J also argues that the ALJ erred in assessing his subjective complaints and self-reported symptoms in violation of SSR 16-3p by mischaracterizing the evidence relating to his schooling, work, and daily activities. SSR 16-3p requires an ALJ to take into account the claimant's reported symptoms and evaluate the intensity, persistence, and limiting

10

effects of those symptoms when determining whether a claimant is disabled. 2017 WL 5180304; *see, e.g.*, *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2017) ("Part of the RFC determination includes an assessment of the claimant's credibility regarding subjective complaints."). In determining the intensity, persistence, and limiting effects of those symptoms, the ALJ

> examine[s] the entire care record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2017 WL 5180304, at *4. This evaluation includes consideration of "(i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)) (citation omitted); *see also* SSR 16-3p, 2017 WL 5180304, at *7-8. Courts should not re-weigh the evidence that the ALJ considered in making a credibility determination. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) ("Despite [Plaintiff's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence."). Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (quoting *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001)).

Mr. J argues that the ALJ failed to properly evaluate his subjective allegations because (1) the record contains no reliable evidence that Mr. J attended school full-time,

11

(2) the ALJ believed that Mr. J was working more than the record supports, and (3) the ALJ failed to assess his medications. Mr. J's records repeatedly state that he was going back to school (R. 2100, 2627, 2640, 2701, 2728-29, 2758, 2821, 2833, 2845), and one of those records clearly states that he was "[g]oing back to school full time." (R. 2729.) As for Mr. J's work record, the ALJ identified the evidence on which he made his determination. Mr. J "testified that he was working for O'Reilly's 12 to 15 hours a week, and also in a seasonal job at Medina Ballroom, sitting on a stool and checking IDs, maybe 6 hours a week." (R. 25; *see also* R. 49-50.) It is not this Court's place to re-weigh the evidence in the record. *E.g.*, *Schmitt*, 27 F.4th at 1361. It is within the ALJ's discretion to accept Mr. J's current testimony as more persuasive than work records encompassing time before the alleged disability onset date.

Finally, Mr. J argues that the ALJ failed to "assess [his] medications." (Pl.'s Br. at 39.) This Court disagrees. The ALJ examined Mr. J's extensive records and treatment history and determined that his complaints were not entirely consistent with the medical evidence and other evidence. The ALJ reviewed Mr. J's evidence of obesity, migraine syndrome, back and left knee impairments, spinal issues, grip strength, shoulder and forearm injuries and treatment, and activities of daily living. (R. 20-26.) This review included Mr. J's use of oxycodone to manage his pain. (R. 24.) Although Mr. J might prefer a more explicit recitation of his medications and their effect on the ALJ's ultimate determination, "an ALJ's failure to cite specific evidence does not indicate that it was not considered." *England v. Astrue*, 490 F.3d 1017, 1022 (8th Cir. 2007). The ALJ evaluated Mr. J's subjective symptoms based on his medical records and testimony, and it is not this

Court's role "to reweigh the evidence or review factual record de novo." *Masterson .v Barnhardt*, 363 F.3d 731, 736 (8th Cir. 2004). The Court finds no error here.

### III.    Substantial Evidence Support's ALJ's Decision

Finally, Mr. J argues that substantial evidence does not support the ALJ's decision because the ALJ failed to build a logical bridge between the medical evidence and the RFC determination. He argues that the ALJ failed to consider the necessary absences that Mr. J would incur as a result of his surgeries and medical appointments, that the medical records show "a pattern of significant anatomical pathology identified through imaging studies that was not surgically addressed or incompletely treated" that requires permanent limitations, and that the ALJ failed to fully consider Mr. J's diabetes in combination with his other impairments. (Pl.'s Br. at 41-44.)

The issue before this Court is not whether substantial evidence exists to support Mr. J's arguments, but "whether substantial evidence supports the ALJ's decision." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)); *see also Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005) ("If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion."). Mr. J argues that the primary gap in the logical bridge is the ALJ's failure to consider Mr. J's necessary absences due to surgeries and other medical appointments. Mr. J also argues that the ALJ "improperly assumed without evidence that [Mr. J's] condition had improved with treatment," and that the ALJ's failure to address how Mr. J's diabetes affects his RFC are errors requiring remand.

This Court disagrees. Mr. J's first two arguments are different facets of the same issue—whether the ALJ's determination is supported by substantial evidence. The ALJ reviewed and analyzed years of Mr. J's medical records, including a gastrectomy in 2023, ongoing migraine syndrome and treatment, treatment after a motorcycle accident, spinal issues, foot surgery, shoulder surgery, and pain management. (R. 476, 528, 1684-1737, 2223-30, 2259-80, 2306, 2663-68, 2808.) The ALJ also considered Mr. J's self-reported daily activities, including recent self-reports of cleaning the house, cooking, driving, and living independently. (R. 2821, 2845.) Furthermore, the ALJ specifically considered Mr. J's diabetes diagnosis when evaluating the severity of his impairments. (R. 14.) And although Mr. J might prefer a deeper, meticulous analysis of the effect that his diabetes might have on each of his other ailments, the ALJ's failure to specifically cite his diabetes does not mean that it was not considered. *England*, 490 F.3d at 1022. Regardless of whether the Court would have reached a different conclusion, substantial evidence on the record supports the ALJ's determination.

## **CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Mr. J's request for relief (Dkt. 9) be **DENIED**;

2. The Commissioner's request for relief (Dkt. 18) be **GRANTED**; and

3.  This matter be **DISMISSED.**

Date: August 7, 2026            *s/Shannon G. Elkins*
                                SHANNON G. ELKINS
                                United States Magistrate Judge